IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALISHA C. COLLINS,

    Plaintiff,

v.                                                             Civ. No. 14-1046 WJ/GBW

THE CITY OF CLOVIS, a municipality
existing under the laws of the State of
New Mexico, Clovis Police Officer,
TREVOR THRON, in his individual and
official capacity, Clovis Police Officer
Sergeant ERIC MULLER, in his individual
and official capacity, Clovis Police Officer
DAYLYN WORMLEY, in his individual and
official capacity, Clovis Police Chief STEVE
SANDERS, individually and in his official capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon a Motion for Summary Judgment and to Stay Discovery filed on February 2, 2015 by Defendants City of Clovis, Trevor Thron, Eric Muller, Daylyn Wormley and Clovis Police Chief Steve Sanders ("Defendants") **(Doc. 19)**.[1] Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is well-taken and, accordingly, it is GRANTED.

### BACKGROUND

This is a civil rights claim by Plaintiff against Defendants alleging false arrest under 42 USC § 1983 and racial discrimination under 42 USC §§ 1981, 1985 and 1986.

---

[1] The Court granted Defendants' request for a discovery stay. *See* Doc. 22 (Order Staying Discovery).

As an initial matter, Plaintiff has filed a separate response contending that Defendants failed to comply with D.N.M.LR-Civ. 7.1(a) requiring that a movant determine whether a motion is opposed. Doc. 23. In response to that charge, Defendants claim they sent a letter to Plaintiff's counsel on December 16, 2014, asking Plaintiff's counsel to dismiss the claims because they were unsupported by law or fact and that if he did not do so, Defendants would be seeking attorney's fees. Doc. 25 at 5. Plaintiff's counsel responded in writing saying that he would not dismiss the case. Defendants explain that given their position, they did not feel it necessary to state opposing counsel's position. While Defendants have not attached a copy of these letters as exhibits, the Court takes Defendants' counsel at her word. The Court fails to see the distinction between what Defendants' counsel did here and what Local Rule 7.1(a) requires, and finds it rather cheeky on the part of Plaintiff's counsel to seek dispositive relief on such a basis. Defendants' counsel did not contact Plaintiff's counsel to *ask* whether Plaintiff's counsel would oppose the summary judgment motion, but it was abundantly clear from the exchange and from Plaintiff's unequivocal response that the motion was indeed opposed. The Court declines to grant Plaintiff any relief on this basis and instead will turn to consider Defendants' motion on its merits.

## I.    Parties' Positions

On June 14, 2012, Plaintiff, who is African-American, was shopping at the Family Dollar Store with her young son in Clovis, New Mexico. When she made her purchase at the front check-out counter, she was given a counterfeit ten-dollar bill by the clerk during the transaction, and neither party contests this fact. Plaintiff claims that when she objected to the clerk and the store manager, the store manager hit her and called the Clovis Police Department, who responded by arresting Plaintiff instead of reviewing the surveillance video of the altercation.

Defendants contend that when Plaintiff pointed out the counterfeit bill to the clerk, the clerk replaced it with a legitimate ten-dollar bill.  However, Plaintiff then claimed she had not received her correct change and when the store manager tried to prove to her that she had received a legitimate bill, Plaintiff attempted to grab cash from the cash drawer, during which the store manager suffered scratches on her arm.  The Complaint alleges the following claims:

> Count One:  False Arrest under 42 U.S.C. § 1983
> Count Two: Municipal Liability under 42 U.S.C. §1983
> Count Three:  Violation of 42 U.S.C. §1985
> Count Four:  Failure to Intervene under 42 U.S.C. §1986
> Count Five: Violation of 42 U.S.C. §1981

**I.     Legal Standard**

The Defendant officers ("Defendants") assert a qualified immunity defense.

A.     <u>Qualified Immunity</u>

Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quotations omitted).   When a defendant asserts a qualified immunity defense, the plaintiff must "meet a strict two-part test."  *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009). The plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct.  *Id*.  The court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first "in light of the circumstances in the particular case at hand."  *Pearson*, 129 S. Ct. at 818 (2009).  Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry.  *Id*. at 816.

If Defendants are found not to be entitled to qualified immunity, the analysis reverts to a traditional summary judgment analysis.  Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).  Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327.

B.     Clearly Established Law

The Court finds that the law applicable to this lawsuit was clearly established at all relevant times.  Probable cause to arrest exists if the facts and circumstances within the officer's knowledge are sufficient to justify a prudent officer in believing the defendant committed or is committing an offense. *See United States v. Stephenson*, 452 F.3d 1173, 1178 (10th Cir. 2006). An outstanding facially valid arrest warrant satisfies that standard.  "[I]n the context of an unlawful arrest, not only must the plaintiff demonstrate that the officer arrested her without probable cause (that is, that he violated a constitutional right), but also that it would have been clear to a reasonable officer that probable cause was lacking under the circumstances (that is, that the right was clearly established in the specific situation)." *Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011).

## DISCUSSION

Defendants contend that the Defendant officers (Officers Thron, Wormley and Mueller) are entitled to qualified immunity on Plaintiff's claims asserted under 42 U.S.C. §1983; that Plaintiff's other claims are without legal foundation; and that there is no basis for Plaintiff's claims of supervisory or municipal liability.

## I.  Undisputed Facts[2]

The following are Defendants statements of fact ("SOF") which the Court finds to be completely undisputed. Plaintiff's responsive facts are flawed because they are collateral, and thus irrelevant, to the fact presented or because they create disputes regarding facts which have nothing to do with the lawsuit. The Court first presents Defendants' undisputed facts and then explains why Plaintiff's responses miss the mark.

On June 14, 2012, Officer Trevor Thron of the Clovis Police Department responded to a call for assistance at the Family Dollar Store with reference to a possible robbery. The suspect at the store was identified as Alisha Collins, the Plaintiff in this lawsuit. The store employees reported that Collins had grabbed money from the store's cash drawer, scratching a store employee in the process following a dispute over whether or not Ms. Collins had received all of the change she was due after a transaction complicated by the exchange of a counterfeit $10 bill.

Officer Thron requested Plaintiff's ID, date of birth and social security number and had police dispatch check for any outstanding warrants, which is standard procedure in any police investigation. Officer Thron was advised that there were two outstanding municipal warrants

---

[2]  Defendants' statement of facts are supported by exhibits attached to the pleadings which are not cited here. Exhibits include Affidavits of the individual Defendant officers and the copies of the outstanding bench warrants for Plaintiff's arrests.

for Plaintiff's arrest.³  Officer Thron then requested another officer to report to the scene and Officer Wormley arrived at the store.  Officer Thron advised Wormley of the outstanding warrants.  Officer Wormley arrested Plaintiff on the basis of the outstanding warrants and transported her to the station.  At the station, Officer Wormley secured physical copies of the outstanding warrants and cross-checked the information in the warrants with Plaintiff's identifiers. He then transported her to the detention center for booking on the outstanding warrants.  Officer Thron remained at the store and conducted his investigation into the robbery allegations, including talking to store employees and viewing the videotape.  Defendant Eric Mueller reviewed the reports submitted by the officers and was not involved in Plaintiff's arrest.  Plaintiff pled guilty to the contempt charges that were the subject of the outstanding bench warrants.  Ex. B & B3.  The bench warrants were issued on June 28, 2011 for charges of contempt of court as a result of Plaintiff's failure to pay fines associated with the City of Clovis. *See* Doc. 24-1 (Pltff's Aff.), ¶ 21.

   Plaintiff's response to Defendants' statement of facts consists of four pages of subdivided paragraphs, but includes no evidence to refute any of Defendants' facts.  A consideration of each of those responsive facts would be tedious as well as fruitless, but a few examples suffice to make the point.  For example, Defendants' SOF 1 states: "On June 14, 2012, Officer Trevor Thron of the Clovis Police Department responded to a call for assistance at the Family Dollar Store with reference to a possible robbery.  The suspect at the store was identified as Alisha Collins, the Plaintiff in this lawsuit."  In an attempt to refute this fact, Plaintiff claims that *she* was the one who insisted on calling the police and that she told Officer Thron that she had been

---

³  The two bench warrants (Exs. B2 and B2) indicate charges of contempt of court, and set bonds at $360.00 and $391, respectively.

given a fake ten-dollar bill.  Neither of those facts negates Officer Thron's statement that he was called to the store about a robbery.

As another example, Defendant's SOF 2 states in part that the store employees reported that Ms. Collins had grabbed money from the store's cash drawer following a dispute over whether Plaintiff had received all of the change that was due her after she had been given a counterfeit ten-dollar bill in a transaction.  Plaintiff "disputes" this fact by claiming that the police report of the incident falsely states that the store manager Michelle Dunn reported that Plaintiff was given a fake ten-dollar bill.  Plaintiff states that Ms. Dunn had actually accused *her* of passing a fake bill and it was actually the store clerk who told Officer Thron that Plaintiff had been given the fake bill and had not tried to pass one to the store.  *See* Ex. 1, ¶ 13 (Pltff's Aff.).  Defendants' SOF 2 is not refuted by these responsive facts because SOF 2 acknowledges that Plaintiff was the recipient of the fake bill in the transaction, and whether it was Ms. Dunn or the store clerk who passed this information along to Officer Thron is neither material nor relevant to the substance of that fact.  Plaintiff's other responsive facts also lack any relevance to the central legal issues in this case and the Court considers these further in the context of the analysis.

**II.     §1983 Claims**

Plaintiff's §1983 claim is premised on arrest without probable cause under the Fourth Amendment.  Plaintiff focuses her responsive efforts on trying to create a factual dispute by attacking the integrity of the outstanding warrants and by disputing facts surrounding the robbery incident at the Family Dollar Store.

A.      <u>Outstanding Municipal Bench Warrants</u>

Defendants move for qualified immunity on the grounds that Plaintiff was arrested under a facially valid arrest warrant.  Plaintiff can defeat qualified immunity only if she can show that

the Defendant officers did not have a good faith basis to believe that there were outstanding and valid warrants for Plaintiff's arrest when she was taken into custody. Plaintiff, however, offers no evidence whatsoever to refute the facts presented by Defendants.

It is undisputed that after he arrived at the Family Dollar Store, Officer Thron requested Plaintiff's ID, date of birth and social security number, and discovered the existence of two outstanding municipal warrants. Plaintiff does not and cannot dispute the existence or validity of these warrants. Instead, she takes a stab at the municipal court's authority to issue bench warrants for failure to pay fines or contempt of court, and arguing that the municipal court lacks jurisdiction to revoke probation. *See* Doc. 24 at 8 (stating that municipal court lacked jurisdiction because Plaintiff's "period of probation had already ended and she was not a fugitive from justice"). However, this argument does not in any way explain why a reasonably prudent police officer would not be justified in believing that the outstanding bench warrants were facially valid. It is also undisputed that after Plaintiff was arrested, the outstanding warrants were cross-checked to assure that the information was correct and that it matched Plaintiff's identifying information.

In the end, Plaintiff presents no facts or evidence that would cast any doubt either on the facial validity of the bench warrants or on the existence of probable cause to arrest Plaintiff based on those outstanding warrants. The Court, therefore, finds that Officer Thron is entitled to qualified immunity because he had a good faith basis to believe that Plaintiff had outstanding warrants for her arrest on June 14, 2015, and that he was carrying out his lawful duties in effectuating her arrest.

Officer Wormley is also entitled to qualified immunity because he had the right to rely on information from Officer Thron when he participated in the arrest of Plaintiff. An officer who is

called to assist another officer is not required to reevaluate the arresting officer's probable cause determination in order to protect himself from personal liability. *See United States v. Hensley*, 469 U.S. 221, 230-33 (1985) (holding officers are entitled to rely on flyer issued by another police department for reasonable suspicion to conduct investigatory stop); *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995) ("Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and to develop probable cause for an arrest") (citation omitted).

As for Officer Mueller, Plaintiff admits there are no material factual issues surrounding his conduct, which was limited to reviewing the other officer's reports. Because this conduct does not amount to a violation of Plaintiff's Fourth Amendment rights, Defendant Mueller is entitled to qualified immunity.

B.  Store Incident

The police report indicates that Plaintiff was also arrested for robbery based on events which took place at the Family Dollar Store, but the charges were dropped. *See* Doc. 24-1 at 8 ("Collins was booked on the warrant *and* for Robbery") (emphasis added); Pltff's Ex. 9.

Plaintiff contends that she was falsely arrested for robbery rather than the bench warrants, relying on the Notice of Dismissal of the robbery charges. *See* Ex. 1, ¶ 22; Ex. 9; Resp. to Defts' SOF 3. According to the Notice, the Criminal Information that was filed regarding charges of robbery was "dismissed without prejudice" for the stated reason: "witnesses uncooperative." Ex. 9. However, the fact that charges for robbery were pending until they were dropped on August 6, 2014 does not negate or refute Defendants' facts showing that there was probable cause to arrest Plaintiff on the basis of the outstanding bench warrants. According to Officer Thron's report, Plaintiff was booked "on the warrant and for Robbery." Doc. 24-1 at 8.

The biggest obstacle facing Plaintiff is the lack of factual dispute regarding the existence of probable cause for arrest based on the outstanding bench warrants.  That finding alone is sufficient to find in favor of Defendants on Plaintiffs' §1983 claim for false arrest.  While the facts surrounding the robbery incident are not material to whether probable cause existed for Plaintiff's arrest pursuant to the outstanding municipal warrants, the Court cannot help but note that Plaintiff does not fare any better in creating a material factual dispute concerning her arrest for Robbery.  For example, Plaintiff states in her affidavit that Defendant Thron failed to investigate the robbery incident at the Family Dollar Store, and specifically, that he refused to view the store videotape.  Resp. to Defts' SOF 3, ¶3(vi); Doc. 24-1 at, ¶ 23.  There is no factual support for this statement.  Officer Thron's affidavit states that he stayed behind after Plaintiff was arrested to conduct his investigation into the robbery allegations, "including talking to other store employees and viewing the videotape." Ex. A, ¶ 7.  Also, the police report states that Officer Thron was informed by the store manager, Michelle Dunn, that the district manager was in the store at the time and was in the back reviewing the video of the incident, and that Officer Throng "made contact" with Ms. Dunn and reviewed the video with her.  Doc. 24-1 at 7.  Plaintiff cannot dispute the fact that Officer Thron did review the videotape, because her affidavit states only that Officer Thron refused to review the video tape *before* arresting her.  Doc. 24-1 at 5, ¶ 23.   Since Officer Thron's review of the videotape and investigation took place after Plaintiff was arrested, Plaintiff has no personal knowledge of what happened during that time and cannot offer any facts to dispute Defendants' version of events regarding Officer Thron's investigation and review of the video tape.

According to Officer Thron's police report, the video tape showed Plaintiff pointing out the fake ten-dollar to the store clerk, who confirmed it was counterfeit with Paula Hurd, the

assistant manager. Ms. Hurd went through the cash drawer, pulled out another ten-dollar bill and gave it to the store clerk. The video "clearly" showed the store clerk giving the ten-dollar bill to Plaintiff, who put the bill in her purse. Plaintiff then asked Ms. Hurd something, which was a request to print out a receipt for Plaintiff, and at that point, Plaintiff informed Ms. Hurd she never received her ten dollars back. Ms. Hurd began a count of the cash register to prove that Plaintiff had already received her ten dollars in change. The report states that before Plaintiff claimed she had not received the ten dollars back, the camera showed Plaintiff taking what appeared to be the ten-dollar bill from her purse that had been given to her by the clerk, crumpled it up in her hand and held it behind her back, after which she informed Ms. Hurd she never received her ten dollars in change. The report states that the camera showed Ms. Hurd pulling the cash drawer from the register to continue the cash count and placing the drawer between her and Plaintiff. Ms. Dunn, the store manager, then steps into view of the camera, and she and Plaintiff begin talking. The report states that Plaintiff could be seen starting to get "impatient," and she reached "onto the counter and put her hand inside the cash drawer" while Ms. Dunn tried to restrain her. Plaintiff reached into the tray with her other hand and grabbed Ms. Dunn's arm which was holding Plaintiff's arm, then grabbed the cash tray and pulled it toward her, dumping it onto the ground. Plaintiff at that point broke away from Ms. Dunn and the report states that Plaintiff leaned down as if she was grabbing something. Doc. 24-1 at 8.

     Plaintiff disputes what the video tape shows, relying on photographs from the video tape which are attached as exhibits to the response. Plaintiff claims that the photographs show Michelle Dunn grabbing Plaintiff's arm; hitting her face with her right arm; grabbing Plaintiff's purse; and pushing Plaintiff to the ground; throwing a can of Pringle potato snacks at her; and trying to come over the counter after pushing Plaintiff to the ground. Doc. 24-1 at 4, ¶¶15-20.

The Court has viewed these exhibits, and while a moving film admittedly would provide a more definitive account, the exhibits themselves do not show most of the events as described by Plaintiff. For example, Plaintiff describes Exhibits 2 and 3 as showing Ms. Dunn grabbing her arm and hitting her face.[4] The photographs do depict Ms. Dunn grabbing Plaintiff's arm as Plaintiff reaches into the register, but they do not show Ms. Dunn hitting Plaintiff's face. Ms. Dunn's arm is below Plaintiff's face closer to her arms, in a gesture consistent with her trying to restrain Plaintiff as Plaintiff reached into the cash drawer with both arms. Plaintiff claims that Exhibits 4 and 5 show Ms. Dunn grabbing her purse, but that is not clear from the photograph. Plaintiff contends that Exhibit 6 shows Ms. Dunn pushing her to the ground, but that exhibit shows only Ms. Dunn reaching over the counter toward Plaintiff, who is about two to three feet away. Exhibit 7 may be described as Ms. Dunn holding an object that might be a Pringles container, but Plaintiff is not in view in that photograph. Plaintiff claims that Exhibit 8 shows Ms. Dunn trying to come over the counter after pushing her to the ground. While Exhibit 8 shows Ms. Dunn leaning all the way over the counter and looking to the far right, it does not show Ms. Dunn pushing Plaintiff to the ground, or anywhere near Plaintiff.

Plaintiff's presentation of these photographs as exhibits does not offer any factual disputes that suggest she was arrested without probable cause. The exhibits are consistent with the police report's description of witness statements and observation of the videotape: there was a struggle while Plaintiff kept trying to dip her hand into the money tray stating that she wanted her change and Ms. Dunn was trying to restrain her from taking money from the tray. Ms. Dunn also reported that Plaintiff scratched her left arm with her finger nails when she tried to prevent Plaintiff from reaching into the money drawer with her other hand. Doc. 24-1 at 7.

---

[4] The photographs as also marked as Doc. 24-1 at pages 9-15.

12

Additionally, even if the Court was to assume that some factual dispute existed over the store incident, such disputes would be immaterial because there was probable cause to arrest Plaintiff solely based on the outstanding municipal warrants. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) (legality of an arrest may even be established by proving there was probable cause to believe the plaintiff committed a crime other than the one with which he was ultimately charged provided the crime under which the arrest was made and the crime for which probable cause exists are related in some fashion); *see also Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest [a suspect] on some ground").

Therefore, the Court finds in favor of Defendants on Plaintiff's §1983 claim alleging on a violation of the Fourth Amendment.

### III.   §1981, § 1985(3) and §1986 Claims

Plaintiff claims that Defendants violated 42 U.S.C. §1981 by racially profiling her and arresting her without probable cause, and that Defendants violated §1985(3) and §1986 because Defendants' actions were motivated by racial animus. Defendants contend that these claims fail because (1) §1985(3) and §1986 claims do not create independent substantive causes of action and (2) because §1981 concerns the making and enforcing of contracts and has no relevance in this lawsuit.

A.   §1981 Claim

42 U.S.C. §1981 prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981a) and (b). As Defendants

13

correctly note, a §1981 claim requires that the action interfered with must be based on a contract. *Hampton v. Dillard Dept. Stores, Inc.,* 247 F.3d 1091, 1101 (10th Cir. 2001) (citing *Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1267 (10th Cir.1989) (requiring actual loss of a contract interest for a § 1981 claim for interference with the right to make and enforce a contract). Because there is no allegation or evidence of a contract at issue in this case, Defendants are entitled to summary judgment on this claim which is alleged as Count V in the complaint.

B.      Claims Brought Under §1985 and §1986

Plaintiff's §1986 claim in Count IV of the complaint is based on a failure to intervene. Count III alleges that Defendants violated §1985 by conspiring to deprive Plaintiff of her Fourth, Fifth and Fourteenth Amendment rights based on wrongful arrest and false imprisonment.

Section 1985(3) prohibits conspiracy based on "class-based discriminatory animus." *Lessman v. MCormick,* 591 F.2d 605, 608 (10th Cir. 1979). The Court agrees with Defendants that Plaintiff's claim that a conspiracy existed to deprive her of her rights is not factually supported anywhere. Inasmuch as Plaintiff bases her claims of class-based animus on an alleged failure to investigate on the part of Officer Thron (which the Court has found to be unfounded) or the events that occurred at the Family Dollar Store after the police arrived, Plaintiff has not presented any facts which even remotely suggest that racial animus played any part in Defendants' actions. Moreover, the Court has already found that there was probable cause for Plaintiff's arrest and therefore there was no violation of her federal constitutional rights. Without an underlying constitutional violation, Plaintiff's §1985(3) fails because §1985 does not create an independent substantive cause of action.[5]

---

[5] Plaintiff does not allege separate claims of violations of her Fifth and Fourteenth Amendment rights, nor could separate allegations be considered in the context of wrongful arrest and false imprisonment, since only the Fourth Amendment is relevant to such claims. *See Albright v. Oliver*, 510 U.S. 266, 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394-95 (1985); *accord*, *Riddle v. Mondragon*, 83 F.3d 1197 (10th Cir. 1996).

Plaintiff's §1986 claim depends on the existence of a valid claim under §1985. *Abercrombie v. City of Catoosa, Okla.*, 896 F.2d 1228, 1230 (10th Cir. 1990). Because Plaintiff's §1985(3) claim does not survive the Court's ruling on the Fourth Amendment claim, Defendants are entitled to summary judgment on Plaintiff's §1986 as well.

## IV.     Municipal Liability Claims

With the dismissal of Plaintiff's claims against the individual police officers, the claims against the chief of Police and the City must also be dismissed as a matter of law. *City of Los Angeles v. Heller,* 475 U.S. 796, 798-99 (1986); *Dry v. U.S.*, 235 F.3d 1249, 1259 (10th Cir. 2000) (("In the absence of an underlying constitutional violation, there can be no derivative liability").

## V.      Defendants' Request for Attorney Fees

Defendants seek an award of attorney fees under 42 U.S.C. §1988, which provides that in an action or proceeding to enforce § 1983, a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *See also Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006). A prevailing defendant may recover an attorney's fee award only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant. *Houston v. Norton*, 215 F.3d 1172, 1174-1175 (10th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 n. 2 (1983) and *Christiansburg Garment Co. v EEOC*, 434 U.S. 412, 421 (1978) (a plaintiff should not be assessed his opponent's attorney's fees "unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly because so. . . .").

---

Also, Plaintiff claims that she was racially profiled by the Clovis Police Department when she was "assaulted and battered" by Ms. Dunn, the store manager. Doc. 24-1 at 5. The Court fails to see how Ms. Dunn's actions (which is consistent with the police report's statement that Ms. Dunn was trying to prevent Plaintiff from taking money from the cash drawer) can be attributed to racial profiling by the Defendant officers.

It appears that Defendants take issue not so much with Plaintiff, but with the conduct of Plaintiff's counsel, who proceeded to litigate this case after being advised that the case had no merit. Moreover, imposing sanctions on Plaintiff would serve no purpose, since Plaintiff most likely was guided by her counsel's advice regarding whether her claim had any merit and for this reason the Court finds that considering a sanction of fees under §1988 is not warranted. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 761 (1980) ("Neither § 1988 nor § 2000e–5(k) makes any mention of attorney liability for costs and fees"). While Defendants did not initially seek attorney's fees under Fed.R.Civ.P. 11 or 28 U.S.C. §1927, these may prove to be more appropriate to address the issue of the insistence of Plaintiff's counsel in pursuing claims that are so obviously devoid of any merit.[6] To this end, if Defendants' counsel wishes the Court to consider sanctions against Plaintiff's counsel, then Defendants' counsel may file a separate motion requesting sanctions against Plaintiff's counsel including the necessary and relevant argument and law. **Any such request for sanctions must be filed within thirty (30) days of the entry of this Memorandum Opinion and Order.**

## CONCLUSION

In sum, I find and conclude that Plaintiff has not presented any material factual dispute regarding the existence of probable cause for arrest, and that Defendants are entitled to summary judgment based on qualified immunity on Plaintiff's claim of false arrest under §1983 in Count One. That finding also necessarily entitles Defendants to summary judgment on Plaintiff's municipal liability claim in Count Two and claims brought under §1985(3) and §1986 in Counts Three and Four. The Court also granted summary judgment in favor of Defendants on Plaintiff's

---

[6] It is not clear whether the letter sent by Defendants' counsel to Plaintiffs' counsel was intended to satisfy Rule 11's "safe harbor" provision. *See* Rule 11(c)(2).

§1981 claim in Count I because this case does not involve any alleged interference or loss of a contract interest, which is required for a §1981 claim.

Finally, the Court denies Defendants' request for attorney's fees under §1988, but will allow Defendants' counsel to file a separate motion requesting sanctions against Plaintiff's counsel including the necessary and relevant argument and law **within thirty (30) days of the entry of this Memorandum Opinion and Order.**

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment and to Stay Discovery **(Doc. 19)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

A Rule 58 Judgment will be entered separately.

_____
UNITED STATES DISTRICT JUDGE